J-S33028-17

2018 PA Super 391

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICHOLAS R. BOYD CHISHOLM | : | |
| | : | |
| Appellant | : | No. 964 MDA 2016 |

Appeal from the Judgment of Sentence June 1, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0006106-2014

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER*, J.

OPINION BY OTT, J.: **FILED OCTOBER 30, 2018**

Nicholas R. Boyd Chisholm[1] appeals from the judgment of sentence imposed on June 1, 2016, in the Dauphin County Court of Common Pleas. The trial court sentenced Boyd Chisholm to an aggregate term of three to seven years' imprisonment following his non-jury conviction of persons not to possess firearms, possession with intent to deliver ("PWID") marijuana, and possession of drug paraphernalia.[2] On appeal, Boyd Chisholm contends the trial court erred in denying his motion to suppress the evidence obtained following an illegal search of his residence. In a memorandum decision filed

---

* Retired Senior Judge assigned to the Superior Court.

[1] Throughout the record, Boyd Chisholm's name appears both with and without a hyphen, *i.e.* Boyd-Chisholm. We have chosen to address him using the spelling on his appellate docketing statement.

[2] 18 Pa.C.S. § 6105 and 35 P.S. §§ 780-113(a)(30) and (a)(32), respectively.

on August 4, 2017, we affirmed Boyd Chisholm's judgment of sentence. *See Commonwealth v. Boyd Chisholm*, 175 A.3d 1050 (Pa. Super. 2017) (unpublished memorandum). However, by Order entered May 16, 2018, the Pennsylvania Supreme Court vacated our decision, and remanded the appeal for further consideration in light of its recent decision in *Commonwealth v. Romero*, 183 A.3d 364 (Pa. 2018). *See Commonwealth v. Boyd Chisholm*, 186 A.3d 938 (Pa. 2018). For the reasons below, we now vacate the judgment of sentence, reverse the order denying suppression, and remand for a new trial.

The facts underlying Boyd Chisholm's arrest and conviction were summarized by the trial court as follows:

> The charges in this case stem from the Dauphin County Sheriff Department's attempt to serve an arrest warrant on Antonio Foster at 2435 Fourth Street, Harrisburg, PA.[3] Specifically, the warrant was for a domestic relations violation[, failure to pay support].
>
> … Terry Shipman of Dauphin County Domestic Relations Office (DRO) [testified] regarding the process of obtaining an arrest warrant for an individual. When a person owes child support and fails to appear for their court proceeding, a warrant is obtained. The initial part of the scheduling process is looking up the address that the DRO has on file. They receive addresses in different ways; sometimes from the individuals themselves, from the other party in the case, or a third party. Before it is used as a valid address, DRO verifies it with the United States Post Office that it is indeed a good address. A standard form, developed and utilized by the DRO, is printed out that includes the individual's name and address in question. The DRO sends that to the Postmaster for the particular postal jurisdiction and asks for

---

[3] Foster is not involved in this appeal.

verification of mail being delivered to that address. In this case, the DRO used the same address that was used for Mr. Foster's court notice, the same address that was provided to the Dauphin County Sheriff's Office. The address would have been verified with the United States Postal Service prior to sending out the notice for Mr. Foster's contempt hearing. Mr. Shipman testified that there was a note in the DRO computer system that in late April of 2014 Mr. Foster was the one who called in and self-reported his address (2435 Fourth Street). If the mail is not returned to the post office, there is an assumption that it was received.

Daine Arthur of the Dauphin County Sheriff's Office also testified at the suppression hearing. Assigned to the Warrant Unit, Deputy Sheriff Arthur was given a Domestic Relations warrant for Antonio Foster, at the address of 2435 Fourth Street, Harrisburg, PA. Deputy Sheriff Arthur testified that he has executed hundreds of domestic relations warrants and that the addresses are very reliable. Deputy Sheriff Arthur executed the warrant on November 10, 2014. When he arrived at the address listed on the warrant, Deputy Sheriff Arthur took a position at the rear of the property with Corporal Darin Sherfey. Deputies Dean Sullivan and Brock Fasnacht stayed to the front of the residence. Deputy Fasnacht radioed Deputy Sheriff Arthur to come around front. Deputy Sheriff Arthur did so, and encountered [Boyd] Chisholm. He informed [Boyd Chisholm] that he had a warrant for Antonio Foster. [Boyd Chisholm] told Deputy Sheriff Arthur that Mr. Foster did not live there. At that point, Deputy Sheriff Arthur told [Boyd Chisholm] that the address on the warrant was the only one they had for Mr. Foster, and that they would have to do a walk-through to make sure Mr. Foster was not there. [Boyd Chisholm] again told the authorities that Mr. Foster doesn't live there, and that he never lived there. Deputy Sheriff Arthur also testified, "In my experience, a lot of times when people say that a certain individual doesn't live there, it's not always a hundred percent true," and that it frequently happens that individuals lie about someone being inside the house. Therefore, Deputy Sheriff Arthur explained again that the authorities had to do a check of the property to make sure Mr. Foster was not there. At that point, [Boyd Chisholm] was inside the house and the sheriffs were on the front porch. [Boyd Chisholm] stepped aside, said okay, and

allowed Deputy Sheriff Arthur, and Deputies Fasnacht and Sullivan into the home.[4]

Upon entry into the property, [Boyd Chisholm] made the statement, "Please don't arrest me." When Deputy Sheriff Arthur asked why, [Boyd Chisholm] stated that he had weed upstairs in his room. [Boyd Chisholm] then led Deputy Sheriff Arthur to his room and pointed out the green leafy substance on his bed. The substance was packaged in clear plastic gallon bags, and there was loose leafy green material on a scale on a nightstand. Everything was in plain view. Deputy Sheriff Arthur radioed Dauphin County Dispatch informing them that he needed a city officer at his location. After the Harrisburg Police arrived, the officers did an additional search. Deputy Sheriff Arthur was not present for this. Deputy Sheriff Arthur also testified that [Boyd Chisholm] was very cordial, well-spoken, and not aggressive.

[] Boyd[]Chisholm also testified. He stated that when he opened his door, the sheriffs told him they had a warrant for Mr. Foster, to which he responded that Mr. Foster did not live there and they could not enter. [Boyd Chisholm] tried to shut the door, and one of the sheriffs put his foot inside the door and told [Boyd Chisholm] he had a warrant for him, and that they were coming in. [Boyd Chisholm] said that at that point, one of the sheriffs radioed for Deputy Sheriff Arthur to come around to the front. As soon as Deputy Sheriff Arthur started talking to [Boyd Chisholm], the officer who had his foot in the door walked into the home. [Boyd Chisholm] testified that he did not resist or fight him.

Trial Court Opinion, 11/15/2016, at 1-4 (record citations omitted). Mr. Foster was not found in the residence, and, in fact, provided a different address two days later, on November 12, 2014, when he arrived at the Domestic Relations Office to "pay his purge and have his warrant lifted." N.T., 6/15/2015, at 20.

_____

[4] We note the trial court did not enter a specific factual finding that Boyd Chisholm gave the officers his consent to search the home, and the Commonwealth does not contend that he did so. Therefore, consent is not at issue in this appeal as it was in **Romero**, **supra**. **See infra** at 13 n.11.

Boyd Chisholm was subsequently charged with persons not to possess firearms, PWID, and possession of drug paraphernalia.[5]  On April 1, 2015, he filed a pre-trial motion to suppress the evidence obtained during the search of his home, arguing the arrest warrant for Foster did not provide the police with sufficient justification to search his residence.  The court conducted a suppression hearing on June 15, 2015, and entered an order on August 4, 2015, denying Boyd Chisholm's motion to suppress.  The trial court later found Boyd Chisholm guilty of the aforementioned offenses following a non-jury trial conducted on March 21, 2016.  On June 1, 2016, Boyd Chisholm was sentenced to a term of three to seven years' imprisonment for the firearms offense, and a concurrent term of one to five years' imprisonment for PWID.  No further penalty was imposed on the count of possession of paraphernalia.  This timely appeal follows.[6]

Boyd Chisholm's sole issue on appeal challenges the trial court's denial of his motion to suppress.  Specifically, he argues, pursuant to the Supreme

_____

[5] A charge of firearms not to be carried without a license was later withdrawn by the Commonwealth.  **See** 18 Pa.C.S. § 6106.

[6] On June 22, 2016, the trial court ordered Boyd Chisholm to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Boyd Chisholm complied with the court's directive, and filed a concise statement on July 7, 2016.

Following the Pennsylvania Supreme Court's remand, we issued a new briefing schedule to the parties.  Accordingly, our citations to the parties' briefs refer to their post-remand submissions.

Court's decision in ***Romero***, ***supra***, the law enforcement officers in the present case unlawfully entered and searched his home; accordingly, all evidence recovered during the search must be suppressed. ***See*** Boyd Chisholm's Brief at 19.

> Our standard of review is well-settled:
>
> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

***Commonwealth v. Mason***, 130 A.3d 148, 151–152 (Pa. Super. 2015) (quotation omitted), *appeal denied*, 138 A.3d 3 (Pa. 2016).

As a general rule, absent limited exceptions such as consent or exigent circumstances, the police must obtain a warrant before searching a residence. ***See Commonwealth v. Caple***, 121 A.3d 511, 517 (Pa. Super. 2015). Whether an arrest warrant alone provides the necessary Fourth Amendment protection to permit an officer to enter a residence to effectuate an arrest was considered by the United States Supreme Court in ***Payton v. New York***, 445 U.S. 573 (1980), and ***Steagald v. United States***, 451 U.S. 204 (1981).

In **Payton**, **supra**, the Supreme Court considered two consolidated appeals in which police officers entered a suspect's home to make a routine felony arrest, **without** an arrest warrant or a search warrant. **See Payton**, **supra**, 445 U.S. at 577-578. The **Payton** Court emphasized there were no exigent circumstances present and consent was not given in either case, which would have obviated the need for a warrant. **See id.** at 583. Under these circumstances, the Court held: "[T]he Fourth Amendment … prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." **Id.** at 576. Nevertheless, the **Payton** Court commented the result might have been different had the police been armed with an arrest warrant:

> If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

**Id.** at 602-603.[7]

The following year, in **Steagald**, **supra**, the Court considered "whether, under the Fourth Amendment, a law enforcement officer may legally search for the subject of an arrest warrant in the home of a **third party** without first obtaining a search warrant." **Steagald**, **supra**, 451 U.S. at 205 (emphasis

---

[7] It merits emphasis there was no question in **Payton** that the homes searched were the residences of the suspects, and the parties did not argue "the police lacked probable cause to believe that the suspect was at home when they entered." **Payton**, **supra**, 445 U.S. at 582.

supplied). Concluding an arrest warrant does not authorize police to search the residence of a third party, the *Steagald* Court explained:

> [W]hile an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ. An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

*Id.* at 212-213. Indeed, the Court commented the arrest warrant at issue "did absolutely nothing to protect [the third party] petitioner's privacy interest in being free from an unreasonable invasion and search of his home." *Id.* at 213. Nevertheless, relying on the above-quoted passage from *Payton*, the *Steagald* Court stated, "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." *Id.* at 221.

Relying on the latter principle, this Court has held that when the police have a reasonable, but mistaken, belief that the subject of the arrest warrant lives at a particular address, they may enter the residence to look for the subject without first obtaining a search warrant. *See Commonwealth v.*

*Muniz*, 5 A.3d 345 (Pa. Super. 2010), *appeal denied*, 19 A.3d 1050 (Pa. 2011).[8]

However, the Pennsylvania Supreme Court's recent decision in *Romero*, *supra*, effectively rejected the "reasonable, but mistaken belief" standard. The relevant facts in *Romero* were as follows. In June of 2011, Earnest Moreno absconded from a halfway house, and a warrant was issued for his arrest. *See Romero*, *supra*, 183 A.3d at 372. Moreno's parole agent, Sean Finnegan, attempted to execute the arrest warrant at 4745 North 2nd Street in Philadelphia, which he believed to be "Moreno's most likely place of residence." *Id.* The residence was the home of Moreno's half-brother, Angel Romero, and his wife, Wendy Castro. *See id.* When Agent Finnegan attempted to serve the warrant, he knocked on the door, announced he had

---

[8] In *Muniz*, *supra*, the police were armed with an arrest warrant for Timothy Baldwin. They developed a reasonable belief Baldwin lived in an apartment at 446 Fremont Street based on the following: testimony from a female at his prior residence; a Lexis/Nexis search, and a statement from a co-resident in the building that he lived there. *Muniz*, *supra*, 5 A.3d at 351. Although the resident, Muniz, informed them Baldwin did not live there, the officer conducted a search for Baldwin (who was not present), and discovered drugs and paraphernalia. *See id.* at 347. On appeal, a panel of this Court concluded the trial court did not err in denying Muniz's suppression motion. The panel determined the officers had a "legal basis to enter the residence in search of Baldwin" based upon their "reasonable (though mistaken) belief" it was his residence. *Id.* at 351. In doing so, the panel rejected evidence that Baldwin's approved parole address was different, and Muniz's mother testified that only she and Muniz lived in the apartment. *See id.* The panel commented, "the testimony of [Muniz's] mother is irrelevant to what authorities believed on the morning of the incident." *Id.*

an arrest warrant for Moreno, and either Romero or Castro permitted him to enter the residence. *See id.* at 372-373. The agent testified: "[T]he residents began to object to the search of their home once a member of the arrest team began to approach the basement." *Id.* at 373. In the basement, the officers did not locate Moreno, but did observe a large marijuana growing operation. *See id.* at 372. Romero and Castro were subsequently charged with drug offenses and possessing an instrument of crime. Both filed a suppression motion challenging the agents' warrantless search of the residence. *See id.* Following a hearing, the suppression court granted the motions, and the Commonwealth filed an interlocutory appeal.

A panel of this Court reversed the order granting the defendants' suppression motions, and remanded the case for trial. Relying on *Muniz*, *supra*, the panel held: "Where authorities have a reasonable belief that the subject of an arrest warrant lives within a given premises, they can enter the home and arrest the suspect without a search warrant." *Commonwealth v. Romero*, 138 A.3d 21, 25 (Pa. Super. 2016). Under the facts of the case before it, the panel concluded the parole agent's testimony regarding how he came to believe Moreno resided at the residence, was sufficient to establish, by a preponderance of the evidence, that the agent "reasonably believed that Moreno's last place of address was [the defendants'] home."[9] *Id.* at 28.

_____

[9] The parole agent provided documentary evidence that the North 2nd Street address was on Moreno's expired driver's license from 2007, and was the

However, on appeal, the Pennsylvania Supreme Court reversed. The lead opinion, authored by Justice Wecht,[10] held: "If entry into a residence is necessary to search for [an individual named on an arrest warrant], then the warrant must reflect a magisterial determination of probable cause to search that residence, regardless of whether the warrant is styled as an 'arrest warrant' or a 'search warrant.'" *Romero*, *supra*, 183 A.3d at 403.

In reaching this decision, the lead opinion considered the interplay of the Supreme Court's decisions in *Payton* and *Steagald*:

> Taken together, *Payton*'s dictum and *Steagald*'s holding stand for a principle that is clear enough in the abstract: police officers may enter the home of the subject of an arrest warrant to effectuate the arrest, but they must obtain a valid search warrant before entering the home of a third party. In the wake of these decisions, however, courts have struggled with the degree and manner of proof required to establish that a place is in fact an individual's residence—the central inquiry that would determine whether a given situation implicates *Steagald*'s holding or, instead, *Payton*'s dictum.

*Romero*, *supra*, 183 A.3d at 389. Indeed, the Court observed that "neither *Payton* nor *Steagald* provided guidance as to the manner in which a particular residence may be determined to be that of one individual or

_____

address Moreno provided to the police department in 2009 when he was on parole. The agent also testified the North 2nd Street address was listed as Moreno's residence in the halfway house records, and the address Moreno provided on the day he absconded. *See Romero*, *supra*, 138 A.3d at 28.

[10] Justices Todd and Donahue joined Justice Wecht's lead opinion. Justice Mundy wrote a concurring opinion, and Justice Dougherty authored a concurring and dissenting opinion, joined by Chief Justice Saylor and Justice Baer.

another." *Id.* at 390. Justice Wecht noted that "[i]n nearly every conceivable circumstance, determining where an individual resides will require some type of investigation." *Id.* Accordingly, the lead opinion determined the proper standard for determining whether a suspect lives at a particular residence could not be anything less than probable cause. *See id.* at 394.

> [L]aw enforcement armed only with an arrest warrant may not force entry into a home based on anything less than probable cause to believe an arrestee resides at and is then present within the residence. A laxer standard would effect an end-run around the stringent baseline protection established in *Steagald* and render all private homes—the most sacred of Fourth Amendment spaces—susceptible to search by dint of mere suspicion or uncorroborated information and without the benefit of any judicial determination.

*Id.*, *quoting* *U.S. v. Vasquez-Algarin*, 821 F.3d 467, 480 (3d Cir. 2016). In reconciling the *Payton* and *Steagald* decisions, Justice Wecht opined:

> We cannot interpret the *Payton* dictum to approve of the intolerable consequence that homes may be searched without a warrant supported by probable cause simply on the strength of a police officer's mistaken assumption. Such a conclusion effectively would nullify the *Steagald* holding. In recognition of this, and until provided contrary guidance from the Supreme Court of the United States, we conclude that *Steagald* must control this area of Fourth Amendment law, and that the *Payton* dictum must yield to *Steagald* and to the volumes of earlier precedent regarding the protection of the home and the necessity of the warrant requirement.

*Id.* at 400.

Accordingly, the lead opinion provided the following guidance:

> From all of the foregoing considerations, a simple and uniform rule emerges. The Fourth Amendment protects the privacy interests in all homes. To overcome that privacy interest, a warrant used to enter a home must reflect a magisterial

determination of probable cause to believe that the legitimate object of a search is contained therein. The form of the warrant is significant only in that it ordinarily signifies "what the warrant authorize[s] the agents to do." *Steagald*, 451 U.S. at 213, 101 S.Ct. 1642. That is, the central distinction between an "arrest warrant" and a "search warrant" is the identification of the particular person or place that the magistrate has found probable cause to seize or to search. If an arrest warrant is based solely upon probable cause to seize an individual, then it authorizes precisely that seizure. **If entry into a residence is necessary to search for that individual, then the warrant must reflect a magisterial determination of probable cause to search that residence, regardless of whether the warrant is styled as an "arrest warrant" or a "search warrant." The critical inquiry is whether the warrant adequately addresses all of the Fourth Amendment interests that are implicated by the contemplated action.**

*Id.* at 403-404 (emphasis supplied and footnotes omitted). Because the arrest warrant at issue was not included in the certified record, the lead opinion remanded the case to the trial court to allow the Commonwealth the opportunity to introduce the warrant into evidence, so that the suppression court could determine whether the "contents of the warrant reflected the magistrate's determination of probable cause to search Romero's and Castro's home[.]" *Id.* at 406.

In a concurring opinion, Justice Mundy joined one part of the lead opinion,[11] and stated she "agree[d] with a significant portion of the lead

_____

[11] The lead opinion also concluded the Superior Court had erred in finding that one of the residents, either Romero or Castro, permitted the officers to enter the home:

[T]he suppression court could not have been more clear, finding as a fact "that the police officer did not have the expressed

opinion's reasoning as well as its mandate to remand to the trial court to give the Commonwealth the opportunity to introduce the arrest warrant to ascertain whether it provided a basis for the search of [Romero and Castro's] home." *Id.* (concurring opinion by Mundy, J.). She explained, however, her "principal point of disagreement with the lead opinion [was] over its treatment of *Payton* as an intermediate category between pure dicta and a binding rule." *Id.* at 407 (concurring opinion by Mundy, J.). Judge Mundy opined that the language in *Payton* has evolved "as its own constitutional rule that requires: (1) a valid arrest warrant; (2) probable cause that the home in question is the arrestee's residence; and (3) probable cause that the arrestee will be found at that home in the moment the search is effectuated." *Id.* (concurring opinion by Mundy, J.). Therefore, she concluded:

> *Payton* requires probable cause to believe that 4745 North Second Street was Moreno's residence *and* that Moreno would be physically present there when the officers effectuated their entry.

*Id.* at 408 (concurring opinion by Mundy J.) (emphasis in original).

---

permission to search the property from the defendants." The only suggestion that Romero or Castro consented to the entry came from Agent Finnegan's testimony, which Romero's account of the events unquestionably contradicted. Because the Court of Common Pleas granted Romero's and Castro's motions to suppress, the Superior Court was not at liberty to consider any of the Commonwealth's contradicted evidence.

*Romero*, *supra*, 183 A.3d at 377. Justice Mundy joined the resolution of the consent issue in full. *See id.* at 406 (concurring opinion by Mundy, J.)

In a concurring and dissenting opinion, Justice Dougherty explained that while he agreed with much of the lead opinion's reasoning, he disagreed with the following:

> (1) its continual reference to the relevant language from *Payton* … as "the *Payton* dictum," and its subsequent treatment of that language; and (2) its ultimate conclusion the Fourth Amendment requires police to obtain a search warrant every time they wish to search a residence for the subject of an arrest warrant.

*Id.* at 409 (concurring and dissenting opinion by Dougherty, J., joined by Chief Justice Saylor and Justice Baer). Justice Dougherty concluded it was unnecessary for the lead opinion to prescribe a new rule, essentially requiring "that police obtain a search warrant every time they wish to search a residence for the subject of an arrest warrant." *Id.* at 410 (concurring and dissenting opinion by Dougherty, J.). Rather, he opined "the critical inquiry in this case[,]" which was not answered by the lead opinion, was "whether Agent Finnegan had probable cause to believe Moreno resided in [Romero and Castro's] home." *Id.* (concurring and dissenting opinion by Dougherty, J.). On that issue, Justice Dougherty would have found the information relied upon by Agent Finnegan did not establish the requisite probable cause, so that he would have reversed the order of the Superior Court and reinstated the order of the suppression court. *Id.* (concurring and dissenting opinion by Dougherty, J.).

Turning to the present matter, the trial court found Deputy Sheriff Arthur had a reasonable basis to believe Foster resided at Boyd Chisholm's residence. Relying on *Muniz*, this Court's prior decision in *Romero*, and

- 15 -

***Commonwealth v. Conception***, 657 A.2d 1298 (Pa. Super. 1995),[12] the trial

court opined:

> Here, deputy sheriffs were executing a domestic relations warrant for Antonio Foster with an address of 2435 Fourth Street in Harrisburg, PA. That address was the only address listed on the warrant. Terry Shipman's testimony emphasized the measures taken to ensure the reliability of the addresses at Dauphin County Domestic Relations, and that the U.S. Post Office verified that [] Mr. Foster was having mail sent to 2435 Fourth Street. Mr. Shipman's testimony was bolstered by Deputy Sheriff Arthur's statements that, in his experience, the addresses on the domestic relations warrants he executes are reliable. He also explained that even though [Boyd Chisholm] denied that Mr. Foster lived there, it was common for people to lie about the presence of wanted persons. The testimony presented leads to the conclusion that the search of the 2435 Fourth Street address was appropriate and supported by a reasonable belief that Mr. Foster resided there. The deputy sheriffs reasonably relied on a warrant address they believed was dependable based on past experience. Pursuant to

---

[12] In ***Conception***, ***supra***, the police arrived at 701 West Wingohocking Street with an arrest warrant for two men, Marcus Rivera and Robert Vargas. Vargas' warrant listed the West Wingohocking residence as one of his three addresses. Conception, who answered the door, told police she did not know either man, and refused to allow them to enter. However, they ignored her objection and forcibly entered the home, where they discovered marijuana in plain view, and Rivera hiding in the bathroom. ***See Conception***, ***supra***, 657 A.2d at 1299.

On appeal, a panel of this Court found the trial court did not err in denying Conception's suppression motion. The panel emphasized the arrest warrant for Vargas specified three addresses for him, one of which was the West Wingohocking residence. Moreover, one of the detectives testified he learned through "reliable information from the narcotics unit … that Rivera and Vargas were staying" at that residence, had been seen in the area, and one of them ran into that residence while being pursued by another officer. ***Id.*** at 1300. Accordingly, the panel concluded "the police officer had a reasonable and well-founded belief that 701 West Wingohocking was the residence of at least one of the fugitives[, and] stated so on his affidavit of probable cause for arrest warrant." ***Id.***

> ***Muniz***, ***supra***, ***Conception***, ***supra***, ***and Romero***, ***supra***, the actions of the deputy sheriffs were reasonable and the search was proper.

Trial Court Opinion, 11/15/2016, at 5-6. Obviously, the trial court was without the benefit of the Supreme Court's decision in ***Romero***. To that end, the Commonwealth contends the ***Romero*** decision simply "reiterated that probable cause remains the standard to enter a residence to execute an arrest warrant." Commonwealth's Brief at 6. Relying upon this Court's decision in ***Muniz***, ***supra***, the Commonwealth insists the deputies in the present case "had sufficient information to form a reasonable belief that Foster lived [at Boyd Chisholm's residence] and was present." ***Id.*** at 7-8.

Boyd Chisholm argues, however, that ***Muniz*** is inconsistent with the Supreme Court's decision in ***Romero***, which controls. ***See*** Boyd Chisholm's Brief at 27. Accordingly, he asserts "a judicial determination is required before entry to the home is made." We agree.[13]

The lead opinion in ***Romero*** explicitly requires "a magisterial determination of probable cause" before police may serve an arrest warrant inside a residence, absent exigent circumstances or consent. ***Romero***,

---

[13] The continued vitality of ***Muniz*** is particularly suspect in light of the panel's explicit rejection of a probable cause standard:

> [W]e … reject [Muniz's] argument that the authorities needed probable cause (beyond the arrest warrant) to enter his residence in search of Baldwin. Indeed, as set forth above, … all that was necessary was a valid arrest warrant and a "reasonable belief" that Baldwin lived in and could be found in the residence.

***Muniz***, ***supra***, 5 A.3d at 352 n.7 (record citation omitted).

***supra***, 183 A.3d at 403. ***See id.*** at 404 ("The critical inquiry is whether the warrant adequately addresses all of the Fourth Amendment interests that are implicated by the contemplated action."). Here, it is clear no such determination was made. The domestic relations capias, which served as the arrest warrant in the present case, is included in the certified record. ***See*** N.T., 6/15/2015, at 53 (Commonwealth's Exhibit 1). While it lists "2435 4th Street" as Foster's address, and Deputy Sheriff Arthur testified the addresses supplied by Domestic Relations are usually "very" reliable,[14] the judicial-approved capias provides no information as to how that address was obtained. ***See id.*** Accordingly, pursuant to the mandate of the lead opinion in ***Romero***, the evidence recovered during the search herein must be suppressed.[15]

Furthermore, even if we were to confine our analysis to the concerns of Justice Mundy in her concurring opinion, the result would be the same. While she did not go so far as to require a magisterial determination of probable cause, Justice Mundy emphasized the language in ***Payton*** requiring probable cause that both (1) "the home in question is the arrestee's residence; and (2)

---

[14] N.T., 6/15/2015, at 35.

[15] We recognize the warrant here was a domestic relations capias issued by the Prothonotary under the authority of a Common Pleas judge for failure to appeal for a non-support hearing, rather than a typical arrest warrant issued by a magistrate for a felony. Nevertheless, we are bound to follow ***Romero***. Our disposition does not implicate the constitutionality of the procedure utilized to issue the capias. Rather, we conclude only the search of the residence was unlawful. Indeed, the only restriction this ruling places on the officers, in the absence of a judicial determination of probable cause, is that they cannot enter a home without exigent circumstances or consent.

… **the arrestee will be found at that home in the moment the search is effectuated**.” **Romero**, **supra**, 183 A.3d at 407 (concurring opinion by Mundy, J.) (emphasis supplied). Indeed, Justice Mundy concluded that even if the parole agent in **Romero** had probable cause to believe the address was the suspect's residence, “the Commonwealth did not provide any evidence that [the suspect] would be physically present when the officer entered [Romero and Castro's] home.” **Id.** at 408 (concurring opinion by Mundy, J.) (footnote omitted).

Here, neither the testimony at the suppression hearing, nor the domestic relations capias for non-support, provided probable cause to conclude Foster would be at the Boyd Chisholm's residence when the warrant was served. Indeed, the warrant itself was issued on August 29, 2014, and the attached domestic relations checklist was completed on September 9, 2014. **See** N.T., 6/15/2015, at 12, 14. Deputy Sheriff Arthur did not attempt to serve the warrant until November 10, 2014. The Commonwealth provided no explanation of any steps taken during the two-month lapse to ensure the address provided for Foster was correct. Accordingly, even under Justice Mundy's concurrence, the testimony at the suppression hearing was insufficient to provide probable cause to search the residence when Foster did not answer the door, no exigent circumstances were present, and Boyd Chisolm did not consent to the search.

Therefore, pursuant to the Supreme Court's mandate in **Romero**, **supra**, we are compelled to vacate the judgment of sentence, reverse the order denying suppression, and remand for a new trial.

Judgment of sentence vacated. Order denying suppression reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2018