J-S26036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH ADAIRE | : | |
| | : | |
| Appellant | : | No. 1616 EDA 2018 |

Appeal from the Judgment of Sentence April 25, 2018
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000133-2017

BEFORE: PANELLA, P.J., GANTMAN, P.J.E., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                **FILED JUNE 17, 2019**

Joseph Adaire (Adaire) appeals from the judgment of sentence of three to twenty-three months' incarceration imposed following his non-jury trial convictions for various counts of Driving Under the Influence (DUI) and DUI with a Suspended License (DUI-S). He challenges the sufficiency of the evidence for the DUI-S charge and the trial court's denial of his motions to suppress. We affirm in part, reverse in part, and remand for further proceedings.

On May 30, 2016, shortly before 9:00 p.m., Officer Ryan Kolb was parked and monitoring traffic when he observed Adaire drive past his location. The officer believed some of the windows were illegally tinted and followed. Officer Kolb ran the plates and learned the vehicle was owned by Joseph Adaire whose driver's license was suspended due to a DUI conviction. Officer

_____
* Retired Senior Judge assigned to the Superior Court.

Kolb suspected that the driver was Adaire because the records check indicated the vehicle's owner lived less than a mile from their location. Additionally, the check stated that Adaire was born in 1962 and the driver appeared to be approximately fifty years old. Officer Kolb then stopped Adaire's car.

During the ensuing discussion, Officer Kolb observed indicia of intoxication and, following Adaire's performance on field sobriety tests, handcuffed and placed Adaire in the back of the patrol vehicle. Officer Kolb then "said something to the effect of 'I have to take you to the hospital, a nurse is going to draw your blood. Is that okay?' And he agreed." N.T. Suppression, 11/1/17, at 18. He transported Adaire to the hospital where Officer Kolb "advised him again" when the nurse entered the room. "Again, I don't recall my exact words, but I said, "The nurse is going to take two vials of blood. 'Are you okay with this?' or 'you are okay with this; correct?' And then he agreed." *Id*. at 19. Officer Kolb did not read any of the DL-26[1]

_____

[1] The Commonwealth Court has described the DL-26 form as follows:

> Beginning on February 1, 2004, Section 1547(b)(2)(ii) of the Vehicle Code required a police officer to warn a licensee stopped on suspicion of driving under the influence (DUI) that the licensee's refusal to submit to a blood test would subject the licensee to enhanced criminal penalties. Section 9.1 of Act of September 30, 2003, P.L. 120. Officers followed that requirement by reading from DOT Form DL–26, a portion of which tracked that statutory language.

**Garlick v. Commonwealth, Department of Transportation**, 176 A.3d 1030, 1032 (Pa. Cmwlth. 2018) (footnote omitted). Precedents have stated

warnings as his department's policy was to "only read DL-26 if they refuse." *Id*. at 34.  A nurse drew Adaire's blood and testing established a blood alcohol content level of .163 and the presence of methamphetamine and oxycodone.

After a stipulated non-jury trial, the trial court found Adaire guilty of the DUI and DUI-S charges.  The trial court found that Officer Kolb had reasonable suspicion to stop Adaire because he:   observed the driver and could approximate his age; obtained information that Adaire owned the vehicle and had a suspended license; and knew that Adaire's residence was less than a mile away.  The trial court also found that the Commonwealth established that Adaire had actual notice of his license suspension by putting into evidence that notice of his suspension was mailed to him on January 22, 2013, and was restored on August 4, 2016.  The trial court also determined that statements

Adaire was charged with a litany of DUI crimes and he filed a motion to suppress on two grounds.  First, he alleged that the seizure was invalid because Officer Kolb stopped Adaire for a window tint violation and he lacked the authority to do so.  Second, he challenged the validity of his consent to the blood draw.  The court denied the motions following an evidentiary hearing.

_____

that officers are required to issue some type of warning.  "The law has always required that the police must tell the arrestee of the consequences of a refusal to take the test so that he can make a knowing and conscious choice."  ***See Commonwealth, Department of Transportation v. O'Connell***, 555 A.2d 873, 877 (Pa. 1989).

made to Officer Kolb demonstrated Adaire's knowledge that his license was suspended.

As to not suppressing the blood test, the trial court's analysis found that the implied consent warning contained in 75 Pa.C.S. § 1547(b)(2) operates in a conditional manner. "I find that there is no requirement that the officer read 1547(b)(1) warnings since the defendant in this particular case had not refused." N.T. Stipulated Trial, 4/25/18, at 6. Because (b)(1) states "If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so," the trial court determined that (b)(2) is not triggered. The trial court instead determined that Adaire gave actual consent to search.

Adaire then took this appeal. For the following reasons, we find that the trial court correctly denied suppression on the first ground but erroneously denied suppression of the blood results.[2] We, therefore, reverse and remand for further proceedings.

## I.

Before addressing the suppression issues, we first decide whether the evidence was sufficient to support the conviction for DUI-S. *See Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super. 2013) ("Because a

---

[2] We address the first ground because success on those grounds would preclude the Commonwealth from proceeding on any of the charges.

successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first."). Because all that the Commonwealth established was that his license suspension was mailed, Adaire contends the evidence is insufficient to establish that he had knowledge that his license was suspended. As explained in **Commonwealth v. Vetrini**, 734 A.2d 404 (Pa. Super. 1999):

> [T]he Commonwealth must prove that the defendant had actual notice that his license had been suspended or revoked. Merely establishing that notice was mailed is not sufficient by itself to show actual notice. The Commonwealth must establish actual notice which may take the form of a collection of facts and circumstances that allow the fact finder to infer that a defendant has knowledge of suspension.

**Id**. at 407 (citations and quotation marks omitted).

However, we have recognized the difficulties in establishing actual notice:

> Notice is a question of fact, and anything that proves knowledge or is legal evidence showing that knowledge exists can be sufficient. As a practical matter, in most cases it is virtually impossible for the Commonwealth to prove positively that the defendant received express actual notice of suspension; only the defendant would have such knowledge. The Commonwealth, relying only upon the facts and circumstances of a case, can, at best, impute such knowledge to the defendant. To hold otherwise would make the provisions of § 1543 virtually unenforceable and unworkable.

**Commonwealth v. Crockford**, 660 A.2d 1326, 1330 (Pa. Super. 1995) (footnote omitted). Relevant evidence includes statements indicating knowledge of the suspension. **See Commonwealth v. Baer**, 682 A.2d 802, 805 (Pa. Super. 1996).

Here, the Commonwealth submitted a certified copy of Adaire's driving record establishing that his license was suspended in 2012 for a DUI and was restored on August 4, 2016, about two months after this incident. Additionally, Adaire introduced the police reports in this case. The report states that when Officer Kolb made contact with Adaire, "Adaire immediately asked me if I could 'help him out,' because his license is suspended and he had only been driving 'around the block.'" **See** Exhibit DS-1B.[3]

We find that this evidence was sufficient. In **Crockford**, we found that the evidence was sufficient to establish actual notice because of "three crucial facts: 1) appellant's license had been suspended for a DUI offense; 2) notice of appellant's suspension had been mailed by PennDOT on October 28, 1992; and 3) appellant failed to produce a current driver's license when he was stopped on March 1, 1993." **Id**. at 1331 (footnote omitted). This case is similar with respect to the first two facts and Adaire did not produce a driver's license, which is not surprising given his statement demonstrating knowledge of the suspension. All of this is evidence that Adaire had actual knowledge of his driver's license suspension.

_____

[3] Adaire concedes in his brief that Officer's Kolb report makes this comment but argues that Officer Kolb did not testify to that at trial. Adaire notes that "help [me] out" could have referred to the fact he was committing a DUI offense. We agree that is a plausible interpretation, but the sufficiency standard of review does not require this Court to give the benefit to the losing party's preferred interpretation of the evidence.

**II.**

Adaire's first suppression claim[4] is that Officer Kolb stopped his vehicle for a window tint violation[5] because "the license suspension was never mentioned in the police incident report and the tint was all that was mentioned." Adaire's Brief at 17. He argues that Officer Kolb lacked reasonable suspicion to investigate a window tint violation as he stated on direct examination that he could see inside the vehicle.

However, the transcript reveals that the tint merely drew Officer Kolb's attention, prompting him to run Adaire's plates. "[W]hat drew my attention

_____

[4] "[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Boyd Chisholm***, 198 A.3d 407, 411 (Pa. Super. 2018) (citation omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Id***. (citation omitted). "Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous." ***Id***. (citation omitted). "Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review." ***Id***. (citation omitted).

[5] "No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S. § 4524(e)(1).

was the window tint. I then followed the vehicle. At that point I ran the registration. And there is maybe a 20 second delay where I am following the car prior to stopping it where I confirmed all that info." N.T. Suppression, 11/1/17, at 49. Adaire emphasizes the fact that the police report does not list the DUI-S charge which "proves" that the window tint violation was the reason for his stop. However, he cites no case for the proposition that a police officer is limited to the information contained in his report when testifying as to why he stopped the vehicle. The omission of that information from the report merely goes to the officer's credibility. The trial judge credited Officer Kolb's testimony regarding the reasons for the stop and we must defer to that finding.

In the alternative, Adaire argues that Officer Kolb's observations were insufficient to permit a stop since he would not have been "able to determine [Adaire's] age from a view of 1-2 seconds when it was dark out at night." *Id*. He argues that this case is akin to *Commonwealth v. Andersen*, 753 A.2d 1289 (Pa. Super. 2000), where we determined that a traffic stop for a suspended driver's license offense was invalid.

*Andersen* examined whether the officer had "articulable and reasonable grounds to suspect that a violation of the Vehicle Code had occurred," and that phrase was interpreted as equivalent to probable cause. *Id*. at 1291-92. In *Andersen*, the officers only knew only that the vehicle was owned by Andersen and that Andersen had a suspended license. We

found that was insufficient to establish probable cause for the stop because it was based on a mere assumption that Andersen was the driver.

However, "articulable and reasonable grounds" came from the then-effective statute, 75 Pa.C.S. § 6308(b). In 2003, the statute was amended and a traffic stop is now permitted on reasonable suspicion if it serves an investigatory purpose. *Commonwealth v. Feczko*, 10 A.3d 1285, 1287 (Pa. Super. 2010) (*en banc*) ("The present form of Section 6308(b) reflects its amendment by the Pennsylvania Legislature in 2004, which inserted a reasonable suspicion standard.").

All that Officer Kolb had to have was reasonable suspicion of DUI-S based on the information known to him, not probable cause like the officers in *Andersen*. And, unlike the officers in *Andersen*, Officer Kolb had much more than a mere hunch or assumption that Adaire was the driver. He could roughly identify the driver's age and the vehicle was less than one mile from the vehicle owner's registered address. The vehicular stop clearly served an investigative purpose as Officer Kolb could make contact with the driver and determine whether it was, in fact, Adaire. Accordingly, we find that the trial court properly denied the portion of the suppression motion seeking to invalidate the stop and all its fruits.

**III.**

Adaire also argues that his consent to the blood draw was involuntary because Officer Kolb did not give any warnings about the blood draw or a right

to refuse the blood draw. He contends that Officer Kolb's failure to comply with 75 Pa.C.S. § 1547(b)(2) vitiates the voluntariness of Adaire's consent and the results of the test should be suppressed. The Commonwealth contends that the implied consent law does not apply because Adaire gave actual consent, which is an exception to the Fourth Amendment separate and apart from implied consent. To address this issue, it is necessary to examine what warnings are required or not required when an officer requests to draw blood.

**A.**

When a motorist is arrested for DUI, police inquiry as to whether the suspect will take a chemical test is not an interrogation and no ***Miranda*** warnings are required. If the driver chooses to refuse, the police can still take a blood draw without violating the defendant's Fifth Amendment right against self-incrimination. ***Schmerber v. California***, 384 U.S. 757 (1966). In those cases, drawing blood requires a search warrant or another exception to the warrant requirement. ***See e.g. Missouri v. McNeely***, 569 U.S. 141 (2013). In ***Birchfield v. North Dakota***, ––– U.S. ––––, 136 S.Ct. 2160 (2016), the United States Supreme Court held that blood tests do not fall under the search incident to arrest exception. As a result, imposing criminal penalties on individuals who refuse to submit to a blood draw is impermissible.

However, when a person refuses to take a blood test or a breath test, then civil penalties may be imposed, including the loss of a driver's license.

"[E]very State also has long had what are termed 'implied consent laws.' These laws impose penalties on motorists who refuse to undergo testing when there is sufficient reason to believe they are violating the State's drunk-driving laws." *Birchfield*, 136 S.Ct. at 2166. In pertinent part, Pennsylvania's implied consent law post-*Birchfield* imposes significant civil penalties if a person does not consent. It also provides the driver a right to refuse chemical testing:

> **(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).
>
> **(b) Civil penalties for refusal.--**
>
> > (1) **If any person** placed under arrest for a violation of section 3802 **is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted** but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
> >
> > * * *
> >
> > (2) **It shall be the duty of the police officer to inform the person that**:
> >
> > > (i) the person's operating privilege will be suspended upon refusal to submit to

chemical testing and the person will be subject to a restoration fee of up to $2,000; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547 (emphases added).

Because a driver who has been asked to submit to chemical testing and is given **Miranda** warnings might mistakenly believe or be confused about whether he could refuse the test, our Supreme Court in **Commonwealth, Department of Transportation v. O'Connell**, 555 A.2d 873 (Pa. 1989),[6]

---

[6] At the time of **O'Connell**, 75 Pa.C.S. § 1547(b) provided as follows:

B. Suspension for refusal

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

**O'Connell**, 555 A.2d at 874 n.1.

held that before a motorist was required to take a test the officer must specifically inform the motorist (1) that his driving privileges will be suspended for one year if he refuses chemical testing; and (2) that his ***Miranda*** rights do not apply to chemical testing. ***See Commonwealth, Department of Transportation v. Ingram***, 648 A.2d 285 (Pa. 1994).

In ***Commonwealth, Department of Transportation, Bureau of Driver Licensing v. Boucher***, 691 A.2d 450 (Pa. 1997), the Court found that because the motorist failed to express a state of confusion regarding his obligations once he was given his ***Miranda*** rights, no additional instructions were required under ***O'Connell***. ***Boucher*** reiterated the necessity of giving ***O'Connell*** warnings even when there is no confusion regarding the warnings explaining:

> [T]he lineage of decisions beginning with ***O'Connell*** have established the following principles:
>
> > (1) the provisions of the Implied Consent Law which require a motorist to submit to chemical sobriety testing or face the temporary loss of driving privileges have the potential to create confusion for the motorist; (2) in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges; (3) the duty of the officer to provide the ***O'Connell*** warnings as described herein is triggered by the officer's request

that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his **_Miranda_** rights.

**_Commonwealth_**, **_Department of Transportation v. Scott_**, 684 A.2d 539, 545 (Pa. 1996),

We held in **_Scott_** that whenever a motorist is requested to submit to chemical sobriety testing, the motorist must be provided with **_O'Connell_** warnings regardless of whether **_Miranda_** rights have been given and regardless of whether the motorist exhibits confusion concerning his rights when asked to submit to testing. **_Id_**_.,_ at 252, 684 A.2d at 545–546.

**_Id_**. at 453–54. Police are thus required to give the warning embodied in the DL-26 at the time the request is made to the driver, not only after a refusal.

To summarize, 75 Pa.C.S. § 1547(b) provides that when a police officer requests chemical testing, the officer must first read the DL-26 warnings; once informed, the driver has the choice of complying or suffering the consequences of refusing chemical testing; and, if the driver refuses, the police cannot obtain a blood test under the implied consent statute.

**IV.**

Very recently, in **_Commonwealth v. Krenzel_**, --- A.3d ---, 2019 PA Super 159 (Pa. Super. May 20, 2019), this Court addressed this exact issue, _i.e._, whether consent to testing is vitiated if the statutory warnings are not given. In that case, after conducting a series of field sobriety tests, the driver consented after the police officer asked the driver if she was willing to submit to a blood test. As here, the police officer never provided any of the DL-26 warnings that 75 Pa.C.S. § 1547(b)(2) require. We found that absent reading

the DL-26 warnings, the consent was not voluntary and any results of the blood draw must be suppressed.

In doing so, **Krenzel** relied on our Supreme Court's decision in **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017). In **Myers**, a police officer arrested the driver for DUI and arranged his transport to the hospital for medical attention. Another officer was dispatched to the hospital but shortly before his arrival medical staff administered medication that rendered Myers unconscious. The officer nevertheless attempted to inform the driver of the consequences if he did not consent. The **Myers** Court determined that even an unconscious driver has the statutory right to refuse testing. In so finding, our Supreme Court stated:

> Subsection 1547(b)(1) confers upon all individuals under arrest for DUI an explicit statutory right to refuse chemical testing, the invocation of which triggers specified consequences. **See** 75 Pa.C.S.A. § 1547(b)(1) ("If any person placed under arrest for DUI is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted[.]"). Under this statutory scheme, a motorist placed under arrest for DUI has a critical decision to make. The arrestee may submit to a chemical test and provide the police with evidence that may be used in a subsequent criminal prosecution, or the arrestee may invoke the statutory right to refuse testing, which: (i) results in a mandatory driver's license suspension under 75 Pa.C.S.A. § 1547(b)(1); (ii) renders the fact of refusal admissible as J-A07005-19 - 9 - evidence in a subsequent DUI prosecution pursuant to 75 Pa.C.S.A. § 1547(e); and (iii) authorizes heightened criminal penalties under 75 Pa.C.S.A. § 3804(c) if the arrestee later is convicted of DUI. In very certain terms, [the Supreme] Court has held that, in requesting a chemical test, the police officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision. **See** [**Com., Dept. of Transp., Bureau of Traffic Safety v**.] **O'Connell**, 555 A.2d [873,] 877–878 (Pa. 1989). "An

- 15 -

arrestee is entitled to this information so that his choice to take a chemical test can be knowing and conscious." *Id*. at 878. The choice belongs to the arrestee, not the police officer.

*Myers*, 164 A.3d at 1170–1171 (some case citations, original brackets, and footnote omitted) (emphasis added). A plurality of the Court[7] went on to state:

Our implied consent statute is not an ipso facto authorization to conduct a chemical test. Rather, it is the statutory mechanism by which a police officer may seek to obtain voluntary consent, unique to this context in that the law prescribes consequences for

_____

[7] This portion of the opinion, which addressed the constitutionality of the implied consent scheme, was joined only by Justices Donohue and Dougherty. The quoted analysis by Justice Wecht addressed actual consent with explicit reference to "the statutory mechanism by which a police officer may seek to obtain voluntary consent[.]" *Id*. at 1176. Thus, under this view, actual consent must be procured by compliance with the statutory mechanisms, which includes the officer's duties to inform under (b)(2). "The opportunity to make a knowing and conscious choice—to decide whether to provide actual, voluntary consent or to exercise the right of refusal—is essential in every situation in which police officers seek to rely upon the implied consent law instead of upon a search warrant." *Id*. at 1177. As a result, a necessary condition of "actual, voluntary consent" in this context is knowing the consequences of refusal. Justice Todd, the fourth vote, joined the portion of *Myers* stating:

As noted, the implied consent statute, itself, states that "[i]t shall be the duty of the police officer" to inform the arrestee of the consequences of refusal. 75 Pa.C.S. § 1547(b)(2). This unambiguous statutory command leaves no doubt regarding the obligations of the police officer requesting the arrestee's submission to a chemical test. *See Weaver*, 912 A.2d at 267 (Baer, J., dissenting) (purpose of the subsection "is to entitle arrestees to the information necessary to assess the dire consequences they face if they fail to consent to chemical testing, to ensure their choice in that regard is knowing and conscious, as we described in *O'Connell*").

*Id*. at 1171 n.12 (emphasis added).

the failure to provide such consent. The statute contemplates a police officer's request that the arrestee submit to chemical testing, and, if the arrestee declines the request, "the testing shall not be conducted." 75 Pa.C.S. § 1547(b)(1). The concept of implied consent does not allow for a chemical test if the arrestee refuses to provide actual consent in response to the police officer's request. If, however, the arrestee complies with the police officer's request, then the arrestee has provided actual consent. Contrary to the Commonwealth's suggestion, the voluntariness of consent at the time of the chemical test remains an essential consideration.

. . . . The statute does not authorize police officers to seize bodily fluids without an arrestee's permission. Instead, it imposes an ultimatum upon the arrestee, who must choose either to submit to a requested chemical test or to face the consequences that follow from the refusal to do so.

*Id*. at 1176–77.

Because Officer Kolb was statutorily obligated to inform Adaire of his right to refuse chemical testing and the consequences arising therefrom and failed to do so, as in *Krenzel*, we find that Adaire did not make a knowing and conscious choice of whether to submit to the blood draw. Since the consent was not voluntary, we must reverse that portion of the suppression order.

Judgment of sentence vacated. Remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/17/19