J-S39040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHELLE KOBAL | : | No. 340 EDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000503-2018

BEFORE: GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED AUGUST 19, 2019**

Appellant, the Commonwealth of Pennsylvania, appeals from the January 11, 2019, order entered in the Court of Common Pleas of Monroe County, which granted the suppression motion of Appellee, Michelle Kobal ("Kobal").[1] After a careful review, we reverse the lower court's order and remand for further proceedings consistent with this decision.

---

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified that the lower court's suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case. Accordingly, this appeal is properly before us for review. **Commonwealth v. Cosnek**, 575 Pa. 411, 421, 836 A.2d 871, 877 (2003) (stating Rule 311(d) applies to pre-trial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

---

\* Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history are as follows: Kobal was arrested and charged with possession of drug paraphernalia, possession of a controlled substance, possession with the intent to deliver a controlled substance ("PWID"), and conspiracy.[2] On May 17, 2018, Kobal filed a counseled omnibus pre-trial motion seeking to suppress the physical evidence seized on October 30, 2017, from the residence at 206 Farrier Lane in Kunkletown, Pennsylvania, by agents of the Pennsylvania Office of the Attorney General, Bureau of Narcotics Investigation. Specifically, Kobal alleged the agents' initial entry into the residence was unconstitutional. She acknowledged the agents had a warrant for her arrest; however, she argued the warrant did not reflect a magistrate's determination of probable cause to search 206 Farrier Lane for her. She further argued her subsequent consent to search the residence was "fruit of the poisonous tree" such that all evidence seized from the residence should be suppressed.[3]

On July 19, 2018, the matter proceeded to a suppression hearing, at which Agent Kirk Schwartz was the sole testifying witness. Specifically, Agent Schwartz, who is a twenty year veteran of the Attorney General's Office and

_____

[2] 35 P.S. §§ 780-113(a)(32), (16), and (30), and 18 Pa.C.S.A. § 903, respectively.

[3] In her brief in support of her pre-trial motion to suppress, Kobal additionally averred the agents did not have consent when they initially entered the residence. In the brief in opposition to the motion, the Commonwealth argued the agents' entry was made pursuant to valid third party consent.

was accepted in this case as an "expert in the field of drug trafficking[,]" testified he has conducted "thousands" of drug trafficking investigations. N.T., 7/19/18, at 7-8. Agent Schwartz testified he received information from a confidential informant ("CI"), who the Agent had relied on numerous times,[4] indicating that Kobal was living in Carbon County on Mauch Chunk Road in Palmerton, Pennsylvania, and she was selling crystal methamphetamine. *Id.* at 9. Accordingly, the Agent set up a controlled buy wherein the CI purchased crystal methamphetamine from Kobal at her then known address in Palmerton. *Id.* "[T]hrough the informant,…Kobal was identified as the subject at that residence who was selling the crystal methamphetamine." *Id.*

Agent Schwartz indicated that, after the initial controlled buy, he "learned that…Kobal was no longer residing in Palmerton." *Id.* at 10. He noted that he began investigating and learned, through the Carbon County Adult Probation Office, that there was an "active bench warrant"[5] issued for Kobal. *Id.* at 11. The address listed on the bench warrant for Kobal was in Northampton County at 2500 Mountain Road, Bath, Pennsylvania. *Id.*

---

[4] Agent Schwartz testified the CI's information led to many arrests, as well as the seizure of controlled substances, in Carbon County. *Id.* at 10.

[5] The suppression court noted in its opinion that the warrant was issued for Kobal's arrest due to a violation of her probation, and the warrant was entitled "Bench Warrant Probation Violation[.]" Suppression Court Opinion, filed 1/11/19, at 3 n.3.

However, Agent Schwartz indicated that he also received information from the CI, as well as other people, that Kobal had actually relocated to Monroe County. *Id.* at 10-11. Specifically, the CI told Agent Schwartz that Kobal was living at 206 Farrier Lane, Kunkletown, Pennsylvania. *Id.*

Agent Schwartz testified that, after the CI informed him Kobal was living at the 206 Farrier Lane address in Monroe County, he wanted to confirm independently that she was, in fact, present at the address. *Id.* at 13. Accordingly, Agent Schwartz testified that, using the CI:[6]

> We decided to make a controlled purchase of crystal methamphetamine from [the 206 Farrier Lane] residence. I wanted to confirm that she was there which we subsequently did. We made another controlled purchase from that residence on that particular date [of October 30, 2017].
>
> When the [CI] left that location, I and another agent met with that [CI], and we had other surveillance agents that maintained surveillance of that residence.

*Id.*

Agent Schwartz testified that, after the CI emerged from 206 Farrier Lane following the controlled buy, the CI met the Agent at a nearby location and informed him that Kobal and her boyfriend were inside of the residence. *Id.* at 14. Agent Schwartz testified that, in an effort to ensure the identification was correct, he showed the CI a photograph of Kobal, and the

---

[6] Agent Schwartz confirmed it was the same CI as the one used in Carbon County. *Id.* at 13.

- 4 -

CI identified Kobal from the photograph. *Id.* at 14-15. The Agent also noted the CI knew Kobal's identity from his past dealings with Kobal. *Id.*

Agent Schwartz testified that, after meeting with the CI, he, as well as his supervisor, went to the 206 Farrier Lane residence and knocked on the back door. *Id.* at 16. An adult male, who was later identified as Lonnie Baylor, answered the door. *Id.* at 17. The agents, who were wearing law enforcement vests, informed Mr. Baylor that they were looking for Kobal and they had a warrant for her arrest. *Id.* Mr. Baylor informed the agents that Kobal was in the bathroom, and Agent Schwartz again stated that they had a warrant for her arrest. *Id.* Mr. Baylor again stated that Kobal was in the bathroom. *Id.*

Agent Schwartz and his supervisor entered the residence,[7] proceeded to the bathroom, took Kobal into custody, and removed her to the porch. *Id.* at 18. Agent Schwartz, who testified he and Kobal "knew" each other well because of "past dealings," informed Kobal the authorities had an arrest warrant for her, and they had been making controlled purchases of crystal methamphetamine from her. *Id.* Agent Schwartz testified the agents "spoke to her about getting consent for [a search of] the residence, which she ultimately signed a written consent for." *Id.* at 18-19.

---

[7] Agent Schwartz described the residence as a cabin with one large open room and a bathroom. *Id.*

On cross-examination, Agent Schwartz clarified that, approximately a week before October 30, 2017, he was told by the CI that Kobal was living at the 206 Farrier Lane address; however, he did not ascertain whether Kobal was a "lease holder or the owner of th[e] residence[.]" *Id.* at 21. Agent Schwartz also clarified the time line with regard to the events occurring on October 30, 2017, as follows.

The agents began surveillance of the 206 Farrier Lane residence at approximately 5:30 p.m., and at 5:47 p.m., they made a controlled buy from the residence using the CI. *Id.* at 24. The agents did not see anyone coming or going from the house from 5:30 p.m. to 5:47 p.m. *Id.* The CI remained in the residence for approximately half an hour, and after the CI exited, the CI proceeded to a prearranged location, which was near the residence, to meet with Agent Schwartz. *Id.* at 25-26. During the meeting, the CI confirmed Kobal was inside the residence. *Id.* at 26. The meeting with the CI ended at 6:30 p.m., at which time Agent Schwartz drove the CI home while other law enforcement officers conducted surveillance of the residence at 206 Farrier Lane. *Id.* at 26-27.

Agent Schwartz confirmed that, at approximately 7:40 p.m., he and his supervisor returned to the scene and knocked on the back door of the residence. *Id.* at 28. An adult male answered the door and twice confirmed Kobal was inside in the bathroom. *Id.* at 29. The agents entered the

residence and then found Kobal painting the walls of the bathroom. *Id.* at 29-30.

Agent Schwartz indicated Kobal accompanied him to the porch, and he informed Kobal he had a warrant for her arrest. *Id.* at 30, 32. Kobal confirmed she was residing at the 206 Farrier Lane house with the owner's permission, and she provided Agent Schwartz with the owner's name and telephone number. *Id.* at 31. Agent Schwartz then called the owner, who verified that Kobal was residing at the residence and most of the items contained in the residence belonged to Kobal. *Id*

Agent Schwartz acknowledged that, prior to entry, he did not contact a magistrate to get a search warrant for the residence; however, he "had information that there was an arrest warrant for…Kobal." *Id.* at 28. Agent Schwartz admitted the arrest warrant had a then known address for Kobal of "2500 Mountain Road, Bath, PA out of Carbon County[.]" *Id.* Agent Schwartz also admitted that, prior to his entry into the residence, there was no indication that anyone in the residence planned to harm him. *Id.* at 30. Agent Schwartz testified that, after Kobal was taken into custody, he sought to gain her consent to search the residence. *Id.* at 33. He testified he presented Kobal with a written "consent form…[that] explain[ed] to her fully that she d[id] not have to consent to the search of the residence[,]" and he verbally explained the form, as well. *Id.*

Agent Schwartz indicated that, after Kobal signed the consent form, she led the agents to the bathroom where a small amount of crystal methamphetamine, as well as drug paraphernalia, was located. *Id.* The agents then searched the residence and discovered additional crystal methamphetamine in the living room, a scale, and the money used by the CI in the controlled buy. *Id.* at 34.

At the conclusion of the hearing, by order and opinion filed on January 11, 2019, the suppression court granted Kobal's motion to suppress the physical evidence seized by law enforcement officers from the 206 Farrier Lane residence.[8] The suppression court concluded that, pursuant to ***Commonwealth v. Romero***, ___ Pa. ___, 183 A.3d 364 (2018) (plurality),[9]

---

[8] In its opinion, the suppression court noted "[t]he items seized from 206 Farrier Lane include approximately 58 grams of methamphetamine, assorted paraphernalia, an electronic scale[,] and United States currency." Suppression Court Opinion, filed 1/11/19, at 4 n.5.

[9] In **Romero**, Earnest Moreno absconded from a halfway house in June of 2011, and a warrant was issued for his arrest. Moreno's parole agent attempted to execute the arrest warrant at 4745 North 2nd Street in Philadelphia, which he believed was Moreno's "most likely place of residence." *Id.* at 372. The residence was the home of Moreno's half-brother (Angel Romero) and his wife (Wendy Castro). *Id.* When the parole agent attempted to serve the arrest warrant, he knocked on the door and either Romero or Castro answered. *Id.* The parole agent announced he had a warrant for Moreno's arrest; however, he did not get consent to enter the premises. *Id.* at 377. Nevertheless, the parole agent entered and, with the occupants objecting, began searching for Moreno. *Id.* at 373. Instead, the parole agent discovered a large marijuana growing operation. *Id.* at 372.
Romero and Castro were charged with various drug offenses, and they argued the initial entry into their home, absent consent or exigent

the arrest warrant did not provide the agents with authority to enter 206 Farrier Lane in order to arrest Kobal, and instead, the agents' authority to enter the home to execute the arrest warrant was required to be authorized by a magisterial determination of probable cause to search that particular home for Kobal, the arrestee. Specifically, the suppression court relevantly concluded:

> Instantly, Agent Schwartz received information that [Kobal] was at 206 Farrier Lane. He learned that [Kobal] was staying there but he was not aware of her living arrangement until after the search. Between the time of the controlled buy and when law enforcement [officers] entered the residence at 206 Farrier Lane, no magistrate was contacted to secure a search warrant.
>
> ***
>
> Although Agent Schwartz was aware that [Kobal] was in the residence at 206 Farrier Lane, he was not aware whether it was

_____

circumstances, was illegal. Our Supreme Court agreed, concluding their Fourth Amendment rights were violated by the parole agent's entry into their home in search of the target of the arrest warrant absent a magisterial determination of probable cause to search that particular home for Moreno. *See id.*

Subsequently, in *Commonwealth v. Boyd Chisholm*, 198 A.3d 407 (Pa.Super. 2018), this Court examined *Romero*. Therein, the police had a domestic-relations *capias*, which served as an arrest warrant, for Antonio Foster with an address listed as 2435 Fourth Street. The deputy sheriff testified the addresses supplied by the Domestic Relations are "very reliable"; however, the *capias* provided no information as to how the address for Foster was obtained. *Boyd Chisholm*, 198 A.3d at 418. Accordingly, before the police could properly enter 2435 Fourth Street to serve the *capias* upon Foster, this Court determined that, pursuant to *Romero*, "a magisterial determination of probable cause" to search that residence for Foster was required before entry into the home, absent exigent circumstances or consent. *See id.* Since such did not occur, this Court concluded the police's entry into the home, without exigent circumstances or consent, was unconstitutional, and thus, illegal contraband seized from a bedroom in which Boyd Chisholm lived violated the Fourth Amendment. *See id.*

her residence, temporary residence or she was staying there as a guest. For constitutional purposes, when an investigation to locate an intended arrestee commences, any candidate residence potentially may be that of a third party,…entry into a third party's home can be justified only by a magisterial determination of probable cause, not merely by an officer's unchecked discretion. No matter how obvious the determination of a suspect's residence may seem, self-evidence as to location of the target of a search, as adjudged by a law enforcement officer, does not suffice to justify a warrantless entry to conduct a search for personal property, and it similarly cannot suffice for purposes of entering a home to search for and to apprehend a suspect.

Although Agent Schwartz was made aware that [Appellant] was in the residence at 206 Farrier Lane, he was not aware whether it was her current residence, temporary residence or that she was staying there as a guest. The **Romero** Court stated that if entry into a residence is necessary to search for an individual, then the warrant must reflect a magisterial determination to search that residence. The bench warrant Agent Schwartz possessed indicated an address for [Kobal] at 2500 Mountain Road, Bath, Pennsylvania. Since Agent Schwartz was entering a residence to seize [Kobal], the warrant required a magisterial determination of probable cause to search that residence. The Bench Warrant…introduced at [the] hearing on July 19, 2018, did not reflect [a] magisterial determination of probable cause to search 206 Farrier Lane or to seize [Kobal] at that location. Although Agent Schwartz had a Bench Warrant to seize [Kobal], he did not take any measures to verify that [Kobal] was residing at 206 Farrier Lane or obtain a search warrant to search that residence for [Kobal].

Under the holding in **Romero**, Agent Schwartz should have obtained a magisterial determination of probable cause to enter that residence. "If entry into a residence is necessary to search for that individual, then the warrant must reflect a magisterial determination of probable cause to search that residence, regardless of whether the warrant is styled as an 'arrest warrant' or a 'search warrant.'"

***

Since entry in this case can only be excused by a recognized exception to the search warrant requirement, such as exigent circumstances, and the Commonwealth has not identified a

- 10 -

recognized exception,[10] we are controlled by the holding in **Romero**. Thus, there was no evidence that the bench warrant for [Kobal] reflected probable cause to enter the residence at 206 Farrier Lane, and therefore, we find that the entry into that residence was unlawful.

[W]e have determined that the entry into 206 Farrier Lane was unlawful and our appellate courts have held that evidence obtained as a result of lawless official acts are the fruit of the poisonous tree. Instantly, the evidence obtained is the "fruit of the poisonous tree" and should be suppressed. This evidence was obtained via exploitation of the initial illegal entry into 206 Farrier Lane without a search warrant reflecting a magisterial determination of probable cause. Therefore, any evidence obtained thereafter, even with the consent to search form signed by [Kobal], was tainted. We…, therefore, grant [Kobal's] Motion and suppress the evidence seized from 206 Farrier Lane.

Suppression Court Opinion, filed 1/11/19, at 7-10 (citations omitted) (footnote added).

On January 25, 2019, the Commonwealth filed a notice of appeal indicating the suppression court's order substantially handicaps or terminates the prosecution of Kobal. All Pa.R.A.P. 1925 requirements have been met.

On appeal, the Commonwealth has set forth the following issues in its "Statement of Questions Involved" (verbatim):

A. Whether the Trial Court erred by concluding that Agent Schwartz did not have a reasonable belief that the defendant resided at 206 Farrier Lane?

---

[10] We note that, despite the fact the Commonwealth argued the agents had consent to enter 206 Farrier Lane to search for Kobal, and the suppression court made various factual findings related to Mr. Baylor permitting the agents to enter, the suppression court did not specifically analyze the issue of consent to enter in its January 11, 2019, opinion. **See** Suppression Court Opinion, filed 1/11/19.

B. Whether the Trial Court erred by concluding that the entry into 206 Farrier Lane was unlawful when Agent Schwartz had consent to enter the residence and arrest the defendant?

Commonwealth's Brief at 4 (suggested answers omitted).

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

**Commonwealth v. Fulmore**, 25 A.3d 340, 346 (Pa.Super. 2011) (citation omitted).

In the instant case, as indicated *supra*, the suppression court concluded that, in light of our Supreme Court's recent opinion in **Romero**, the arrest warrant, which listed an address for Kobal in Northampton County, did not provide the necessary Fourth Amendment protection to permit the agents to enter the residence at 206 Farrier Lane in Monroe County to effectuate an arrest of Kobal. Suppression Court Opinion, filed 1/11/19, at 7-10. Specifically, the suppression court concluded that, under **Romero**, a magisterial determination of probable cause for the target of the arrest warrant was required before the agents could enter and serve the arrest warrant inside the particular residence. **See id.**

Assuming, *arguendo*, the suppression court correctly concluded the arrest warrant did not provide the agents with constitutional authority to enter the residence in the case *sub judice*, we agree with the Commonwealth's second appellate argument: the agents were permitted to make a warrantless entry into 206 Farrier Lane to apprehend Kobal since they obtained consent to enter from Mr. Baylor.[11]

The Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution protects the people from unreasonable searches and seizures. ***Commonwealth v. Basking***, 970 A.2d 1181 (Pa.Super. 2009). "Although as a general rule, warrantless searches unsupported by probable cause are unreasonable, our courts have recognized an exception when a third party consents to the search[.]" ***Commonwealth v. Simmen***, 58 A.3d 811, 816 (Pa.Super. 2012). "Both the federal and Pennsylvania constitutions permit third party consent to a search." ***Commonwealth v. Reese***, 31 A.3d 708, 722 (Pa.Super. 2011) (*en banc*). A third party with apparent authority over

---

[11] In its Rule 1925(a) opinion, the lower court indicated the following:
> [The Commonwealth] also argues that this Court erred in concluding that the entry into 206 Farrier Lane was unlawful when Agent Schwartz had implied consent to enter the residence and arrest [Kobal]….We specifically addressed this issue in our [January 11, 2019] Opinion.

Lower Court Rule 1925(a) Opinion, filed 3/1/19, at 2.

However, a review of the suppression court's January 11, 2019, opinion reveals that the court made no express determination as to whether Mr. Baylor consented to the agent's entry into the home. Rather, the suppression court focused its analysis on whether the arrest warrant alone provided the agents with authority to enter the residence to search for Kobal.

the area to be searched may provide police with consent to search. *Commonwealth v. Strader*, 593 Pa. 421, 931 A.2d 630 (2007). Third party consent is valid when police reasonably believe a third party has authority to consent. *See id.*

> Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted on facts leading sensibly to their conclusions of probability.

*Basking*, 970 A.2d at 1190 (quotation and citation omitted). Moreover, this Court has previously stated that "law enforcement authorities need not question an individual as to his or her actual authority to consent, once that individual has consented to an entry of the premises." *Commonwealth v. Quiles*, 619 A.2d 291 (Pa.Super. 1993).

A consent is "voluntary" when it is the "product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." *Commonwealth v. Acosta*, 815 A.2d 1078, 1088 (Pa.Super. 2003) (*en banc*) (citation omitted). "While knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Commonwealth v. Powell*, 994 A.2d 1096, 1102 (Pa.Super. 2010). Furthermore, verbal and non-verbal cues may constitute

- 14 -

valid consent to enter a premise. *Commonwealth v. Daniels*, 421 A.2d 721, 722 (Pa.Super. 1980) (concluding consent was given when the defendant "unlocked the door, did not respond to the policeman's questions, and allowed the policemen to enter [without verbal permission]").

Here, the uncontradicted evidence revealed that Agent Schwartz and his supervisor, both of whom were wearing law enforcement vests, knocked on the back door of 206 Farrier Lane and were greeted by an adult male, later identified as Mr. Baylor. The agents informed Mr. Baylor they were looking for Kobal, and they had a warrant for her arrest. Mr. Baylor informed the agents that Kobal was in the bathroom. The agents again informed Mr. Baylor they had a warrant for Kobal's arrest, and Mr. Baylor again confirmed Kobal was in the bathroom. Mr. Baylor permitted the agents entry into the residence, which Agent Schwartz described as a cabin, and the agents found Kobal painting walls in the bathroom.

Based on the aforementioned, we conclude the agents reasonably relied upon the voluntary consent of Mr. Baylor, who had the apparent authority to permit the agents to enter via the back door of the residence. We note there is no evidence Mr. Baylor was under undue police coercion or duress when he permitted the agents to enter the residence and directed them to the bathroom. *See Commonwealth v. Cleckley*, 558 Pa. 517, 738 A.2d 427 (1999) (indicating the use of duress or coercive tactics by law enforcement personnel is a factor to consider in whether consent was voluntary).

- 15 -

Accordingly, we agree with the Commonwealth that the uncontradicted evidence reveals the agents initially entered the residence with consent such that a warrant was not required.[12]

For all of the aforementioned reasons, we reverse the suppression court's order and remand for additional proceedings.

Reversed; Remanded; Jurisdiction Relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/19

---

[12] The suppression court determined that, after Kobal was arrested, her consent to search the residence was invalid as "fruit of the poisonous tree." However, in light of our conclusion the agents entered the residence pursuant to valid consent, we disagree the subsequent search of the residence was invalid on this basis. Further, there is no indication Kobal's consent to search the residence was involuntary.